UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SYRACUSE MOUNTAINS
CORPORATION,

                Plaintiff,

    v.

PETRÓLEOS DE VENEZUELA S.A.,

                Defendant.

Civil Action No.: 21-cv-2684-VEC

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Hughes Hubbard & Reed LLP
Nicolas Swerdloff
Michael A. DeBernardis
One Battery Park Plaza
New York, NY 10004
Tel: 212-837-6167
Fax: 305-351-9771

*Counsel for Plaintiff Syracuse
Mountains Corporation*

100904741_7

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS......................................................................................................2

ARGUMENT...........................................................................................................................4

I.      No-Action Clauses Are Strictly Construed Under New York Law ...................................4

II.     The No-Action Clause Here Does Not Apply To Claims Under The Notes ......................6

CONCLUSION......................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                                    **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................4

*Cruden v. Bank of New York*, 957 F.2d 961 (2nd Cir. 1992) ...................................................6

*In re Envirodyne Industries, Inc.*, 174 B.R. 986 (Bankr. N.D. Ill. 1994) ...................................10

*Feldbaum v. McCrory Corp.*, Civ. A. Nos. 11866, 11920, 12006,
   1992 WL 119095 (Del. Ch. Jun. 1, 1992) .................................................................6

*ImagePoint, Inc. v. JPMorgan Chase Bank, National Association*,
   27 F. Supp. 3d 494 (S.D.N.Y. 2014)..........................................................................7

*Lange v. Citibank N.A.*, No. Civ.A. 19245-NC, 2002 WL 2005728
   (Del. Ch. Aug. 13, 2002) ...........................................................................................6

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
   No. 11 MDL 2262 NRB, 2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019)................4

*Lovati v. Petróleos de Venezuela*, No. 1:19-cv-4799 ALC, 2020 WL 5849304
   (S.D.N.Y. Sept. 30, 2020)..................................................................................*passim*

*McMahan & Co. v. Wherehouse Entertainment, Inc.*, 859 F.Supp 743
   (S.D.N.Y. 1994) .........................................................................................................6

*Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Construction Co.,
Inc.*, 932 F.2d 1443 (11th Cir. 1991).........................................................................7

*Quadrant Structured Production Company Ltd. v. Vertin*, 23 N.Y.3d 549 (2014)............ 5, 6, 7, 9

*Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232 (S.D.N.Y. 2013) ..................................................4

*Upic & Co. v. Kinder-Care Learning Centers, Inc.*, 793 F.Supp. 448
   (S.D.N.Y. 1992) .......................................................................................................10

*Victor v. Riklis*, No. 91 Civ. 2897 LJF,1992 WL 122911 (S.D.N.Y. May 15, 1992)....................6

Plaintiff Syracuse Mountains Corporation ("Syracuse" or "Plaintiff") respectfully submits this memorandum of law in opposition to the Motion to Dismiss the Complaint dated May 21, 2021 ("Motion to Dismiss") filed by Defendant Petróleos de Venezuela ("PDVSA" or "Defendant").

## PRELIMINARY STATEMENT

This is a simple breach of contract case:

- PDVSA raised capital through a series of note offerings (the "Notes") issued under identical indentures (the "Indentures");

- The Notes – all functionally identical – set forth PDVSA's unconditional promise to pay interest and principal on specified dates;

- Syracuse beneficially owns five series of Notes with a combined face value totaling $376,038,000; and

- PDVSA has failed to pay interest due on all five Notes as well as principal due on two of the Notes.

PDVSA does not – and cannot – dispute these basic facts. Instead, it erects a procedural roadblock to attempt to delay payment of its obligations under the Notes, asserting that the so-called no-action clause in each Indenture bars any breach of contract claim for interest and principal due under the Notes. PDVSA's procedural maneuver, however, misses the mark.

The no-action clause here, by its own terms, applies only to suits to enforce, or exercise any remedy under, the *Indentures* and thus does not extend to suits under the *Notes*. This limitation ends the matter, for the law is clear that a no-action clause is strictly construed according to its terms. Tellingly, PDVSA cannot point to a single case holding that a no-action clause limited by its terms to an indenture also prevents a noteholder from filing a breach of contract action for principal and interest due under a note. To the contrary, Southern District Judge Andrew Carter Jr. recently rejected such a construction of this exact no-action clause,

holding that it does *not* bar a breach of contract claim under the notes. *See Lovati v. Petróleos de Venezuela*, No. 1:19-CV-4799 ALC, 2020 WL 5849304 (S.D.N.Y. Sept. 30, 2020).  This Court should hold the same and deny the Motion to Dismiss.

## STATEMENT OF FACTS

During the period 2007 through 2013, PDVSA offered various notes to raise capital. Syracuse is a beneficial owner of five series of functionally identical Notes with a combined face value totaling $376,038,000 (Compl. ¶¶ 1, 15).  Each of the Notes contains an unconditional obligation by PDVSA to pay interest and principal on specified dates (Compl. ¶ 3).  The Notes were issued pursuant to five Indentures dated April 12, 2007, February 17, 2011, November 17, 2011, May 17, 2012, and November 15, 2013, which govern the process for each offering[1] (Compl. ¶ 2).

The Indentures contain substantively the same terms, including the following no-action clause, which by its terms is limited to proceedings to "enforce," or "exercise … any … remedy" under, the Indenture:

> A Holder shall not have any right to institute any suit, action or proceeding **for the enforcement of this Indenture, or for the exercise of any other remedy hereunder** unless:  (i) such Holder has previously given the Trustee notice that an Event of Default is continuing; (ii) Holders of at least 25% in aggregate principal amount of the then Outstanding Notes voting as a single class have requested the Trustee to pursue the remedy; (iii) such Holders have offered the Trustee security or indemnity satisfactory to the Trustee against any loss, liability or expense; (iv) the Trustee has not complied with such request within 60 days after the receipt of the request and the offer of security or indemnity; and (v) Holders of a majority in aggregate principal amount of the then Outstanding Notes voting as a single class have not given the Trustee a direction inconsistent with such request within such 60-day period; it being understood and intended that no one or more Holders shall have any right to affect, disturb or prejudice in any manner whatsoever the benefit of this Indenture afforded the Notes by its or their action, or to enforce, except in the manner provided herein, any remedy, right or power hereunder.  Any suit, action or proceeding shall be instituted and maintained in the manner provided herein for the benefit of the Holders of all Outstanding Notes.

---

[1] The Indentures are attached to the Complaint as Exhibits A, B, C, D, and E.

Ex. A at § 5.1(h); Exs. B-E at § 5.01(i) (emphasis added). The clause does not state that it also applies to suits under the Notes.

The no-action clause is limited in two significant additional ways. First, the Indentures make clear that noteholders retain all other rights, including any rights under the Notes:

> Cumulative Rights and Remedies. Except as otherwise provided with the respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes, **no right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy**, and every right and remedy shall, to the extent permitted by Applicable Law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. **The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy**.

Ex. A at § 5.1(k); Exs. B-E at § 5.01(l) (emphasis added); *accord Lovati*, 2020 WL 5849304, at *5 (holding that the above Cumulative Rights and Remedies provision "protects noteholders' rights and remedies existing outside of the Indenture, including the common law right to sue under the Notes"). Second, the no-action clause does not extend to suits under the Indentures to receive principal and interest payments upon the maturity of the Notes:

> Unconditional Right of Holders to Receive Principal, Premium and Interest. Notwithstanding any other provision this Indenture, any Holder shall have the right which is absolute and unconditional, to receive payment of the principal of (and premium and additional Amounts, if any) and interest, if any, on such Note on the Maturity Date of such Note (or, in the case of redemption, on the Redemption Date) and to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Holder.

Ex. A at § 5.1(i); Exs. B-E at § 5.01(j).

PDVSA failed to make payments of interest when due on all of the Notes (Compl. ¶ 16) and to make principal payments on two of the Notes (Compl. ¶¶ 18–19). Syracuse thereafter filed this action, asserting five breach of contract claims under the Notes. Each claim seeks

payment of unpaid interest (Counts I-V) while two also seek payment of principal due under the Notes (Counts I and II).

## ARGUMENT

In analyzing a motion to dismiss, "the Court construes the complaint liberally, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 246 (S.D.N.Y. 2013) (internal citation omitted). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (internal citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim has sufficient "facial plausibility" to withstand dismissal when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663.

PDVSA, having defaulted on its obligations under the Notes, nonetheless seeks to avoid payment by asserting that the no-action clause in the Indentures bars each breach of contract claim. PDVSA cannot so escape liability because (i) no-action clauses are strictly construed under New York law, and (ii) the no-action clause here, by its own terms, does not apply to claims under the Notes, as one Southern District Judge recently confirmed. *See Lovati*, 2020 WL 5849304, at *5.

**I.    No-Action Clauses Are Strictly Construed Under New York Law**

The law is settled in New York[2] that "the legal effect of a 'no-action' clause depends on a fact-specific inquiry into the language of the particular no-action clause at issue." *In re LIBOR-*

---

[2] The Indentures are governed by New York law. *See* Ex. A at § 10.3; Exs. B-E at § 10.03.

*Based Financial Instruments Antitrust Litigation*, No. 11 MDL 2262 NRB, 2019 WL 1331830, at \*19 (S.D.N.Y. Mar. 25, 2019). As the New York Court of Appeals made clear in *Quadrant Structured Production Company Ltd. v. Vertin*, 23 N.Y.3d 549 (2014), the leading New York case on no-action clauses, the fact-specific inquiry focuses on whether the no-action clause, by its terms, applies to suits related to only the indenture or to both the indenture and the underlying notes or securities.

> The no-action clause in *Quadrant* was limited to the indenture:
>
> <u>Limitations on Suits by Securityholder</u>. No holder of any Security shall have any right by virtue or by availing of any provision **of this Indenture** to institute any action or proceeding at law or in equity or in bankruptcy or otherwise upon or under or **with respect to this Indenture**, or for the appointment of a trustee, receiver, liquidator, custodian or other similar official or for any other remedy hereunder, unless such holder previously shall have given to the Trustee written notice of default in respect of the series of Securities held by such Securityholder and of the continuance thereof, as hereinbefore provided, and unless also the holders of not less than 50% of the aggregate principal amount of the relevant series of Securities at the time Outstanding shall have made written request upon the Trustee to institute such action or proceedings in its own name as trustee hereunder and shall have offered to the Trustee such reasonably indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby and the Trustee for 60 days after its receipt of such notice, request and offer of indemnity shall have failed to institute any such action or proceedings and no direction inconsistent with such written request shall have been given to the Trustee pursuant to Section 7.08 hereof within such 60 days.

*Quadrant*, 23 N.Y.3d at 556–57 (emphasis added). The New York Court of Appeals, focusing on this language and applying "well established principles of contract interpretation . . . with the understanding that no-action clauses are to be construed strictly and thus read narrowly," held that the no-action clause did not extend to claims on the underlying securities. *Id*. at 559–60. As the Court of Appeals stated: "a no-action clause which by its language applies to rights and remedies under the provisions of the indenture agreement, but makes no mention of individual

suits on the securities, does not preclude enforcement of a securityholder's independent common-law or statutory rights." *Id.* at 559.

In reaching this holding, the *Quadrant* court distinguished the no-action clause at issue there from broader no-action clauses that reach actions "with respect to this Indenture *or the Securities*." *Id*. at 557 (emphasis added); *compare McMahan & Co. v. Wherehouse Entertainment, Inc.*, 859 F.Supp 743, 749 (S.D.N.Y. 1994) ("The No Action Clause is broad and applies to 'any remedy with respect to [the] Indentures or the Securities.")*, and Victor v. Riklis*, No. 91 Civ. 2897 LJF,1992 WL 122911, at *6 (S.D.N.Y. May 15, 1992) (no-action clause prohibited "any remedy with respect to [the] Indenture or the Securities"), and *Lange v. Citibank N.A.*, No. Civ.A. 19245-NC, 2002 WL 2005728, at *1 (Del. Ch. Aug. 13, 2002) (no-action clause stated that "[a] Securityholder may not pursue any remedy with respect to this Indenture or the Securities"), and *Feldbaum v. McCrory Corp.*, Civ. A. Nos. 11866, 11920, 12006, 1992 WL 119095, *5 (Del. Ch. Jun. 1, 1992) (no-action clause stated that "[a] Securityholder may not pursue any remedy with respect to this Indenture or the Securities"), *with Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (2nd Cir. 1992) (holding that no-action clause with language limited to the "indenture" did not bar claims that were outside of the indenture).  In contrast to such broad clauses, the no-action clause in *Quadrant* did not "extend beyond the four corners of the indenture agreement to cover securities-based claims" and thus "left a securityholder free to pursue independent claims involving rights not arising from the indenture agreement." *Id*. at 561.

## II. The No-Action Clause Here Does Not Apply To Claims Under The Notes

Like *Quadrant*, the no-action clause in the Indentures is limited by its terms to claims under the Indentures. It states, in pertinent part, that: "A Holder shall not have any right to institute any suit, action or proceeding *for the enforcement of this Indenture, or for the exercise*

*of any other remedy hereunder* unless" certain conditions are met. Ex. A at § 5.1(h); Exs. B-E at § 5.01(i) (emphasis added). As a result, the no-action clause on its face does not apply to suits under the Notes.

Under general rules of contract interpretation, PVSA must be deemed to have intentionally omitted any reference to the Notes in the no-action clause, for two reasons. First, the omission is conspicuous, given that other provisions of the Indentures specifically refer to the Notes.[3] *See ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F.Supp.3d 494, 510 (S.D.N.Y. 2014) (finding "'when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded'") (quoting *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Const. Co., Inc.*, 932 F.2d 1443, 1449 (11th Cir. 1991)). Second, in 2000 (before any of the relevant Indentures were prepared), the American Bar Association Ad Hoc Committee for the Revision of the Model Simplified Indenture, which was then looking at revised model indenture language, suggested the use of certain broad no-action clause language referencing both the indenture and accompanying securities. *See Quadrant*, 23 N.Y.3d at 567-68. PDVSA, however, did not include this broad language in the Indentures, further evidencing a conscious decision to omit any reference to the Notes in the no-action clause. *See id.* at 560 ("if parties to a contract omit terms—particularly terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission").

Indeed, the Cumulative Rights and Remedies provision in the Indentures confirms that noteholders maintain their rights to bring suit under the Notes, expressly preserving any rights the noteholders may have outside of the Indentures:

---

[3] *See, e.g.* Ex. A § 10.3 and Exs. B-E at § 10.03 ("Governing Law"); Exs. A-E § 10.10 ("Submission to Jurisdiction; Waivers").

> <u>Cumulative Rights and Remedies</u>. Except as otherwise provided with the respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes, no right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by Applicable Law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Ex. A at § 5.1(k); Exs. B-E at § 5.01(l). This provision, by stating that "no right or remedy" under the Indenture "is intended to be exclusive" and is in fact "cumulative and in addition to every other right and remedy . . . existing at law or in equity or otherwise," recognizes that noteholders have rights under the Notes. The provision even declares that the Indenture "shall not prevent the concurrent assertion or employment of" any such rights. Together with the clear terms of the no-action clause, this Cumulative Rights and Remedies provision makes clear that the Indentures do not restrict Plaintiff's suit for breach of contract under the Notes.

The provision in the Indentures preserving noteholders' rights to bring suit for interest and principal at maturity does not suggest otherwise. *See* Ex. A at § 5.1(i); Exs. B-E at § 5.01(j). Rather, this provision overrides the no-action clause to give noteholders the ability to commence a suit *under the Indenture* on the maturity date for owed interest and principal. This right is separate and distinct from, and arguably broader than, noteholders' rights under the Notes. For example, noteholders may be able to bring suit to enforce the guaranty set forth in Article 7 of the Indentures.

Judge Carter of the Southern District recently faced the precise issue as here, and expressly held that the no-action clause in the Indentures does *not* bar a claim under the Notes for missed interest payments, either before or at maturity. *See Lovati*, 2020 WL 5849304, at *5. Specifically, in *Lovati*, plaintiffs sued PDVSA for interest payments due on notes issued under

the February 17, 2011 indenture ("2011 Indenture") – one of the Indentures at issue in this case. PDVSA, represented by the same counsel, made the same no-action clause argument to support a motion to dismiss. Judge Carter denied the motion, holding that, under *Quadrant* and other relevant case law, the no-action clause did not bar a suit for payment on the Notes. *See id*.

PDVSA asserts that "Judge Carter's reliance on *Quadrant* was misplaced," because *Quadrant* merely addressed the question of whether "non-contractual claims could be asserted by noteholders despite a no action clause." *Id*. PDVSA is wrong. *Quadrant* clearly faced the issue at hand here, permitting noteholders to enforce contractual rights independent of an indenture: "we conclude that a no-action clause which by its language applies to rights and remedies under the provisions of the indenture agreement, but makes no mention of individual suits on the securities, does *not preclude enforcement of a securityholder's independent common-law or statutory rights*." *Quadrant*, 23 N.Y.3d at 559 (emphasis added). In fact, Judge Carter expressly rejected PDVSA's argument about the scope of *Quadrant*:

> PDVSA's argument is undercut by *Penades*, where the plaintiff sued for interest payments owed him on the bonds. Again, although plaintiff's efforts to enforce the bonds in *Penades* was denied, this court's application of *Quadrant* to this breach of contract case suggests that *Quadrant's* holding is not limited as PDVSA advocates.

*Lovati*, 2020 WL 5849304, at *5. Judge Carter added that the Cumulative Rights and Remedies provision of the Indentures "protects noteholders' rights and remedies existing outside of the Indenture, including the common law right to sue under the Notes." *Id.*

Here, as in *Lovati*, the no-action clause is "limited to claims related to the Indenture" and does "not bar specifically individual suits for enforcement of the notes." 2020 WL 5849304, at *5. Here, as in *Lovati,* Plaintiff seeks to exercise its common law right to enforce the Notes. *Id.* ("although the Indenture does not confer Note-based enforcement rights, it does provide that its

terms should not be understood to limit the already-existing common law right noteholders have to enforce these instruments."); *see also In re Envirodyne Industries, Inc.*, 174 B.R. 986, 994 (Bankr. N.D. Ill. 1994) ("[t]he right to receive interest semiannually *is granted on the face of the Notes*, and any suit related to this right is not subject to any limitations that may be contained in the Indenture") (emphasis added); *Upic & Co. v. Kinder-Care Learning Centers, Inc.*, 793 F.Supp. 448, 454–55 (S.D.N.Y. 1992) (holding that a no-action clause did not apply to "actions by a noteholder for payment of principal and interest due under a note").  PDVSA cannot escape liability based on the no-action clause.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Dismiss and grant such further relief as the Court may deem just and proper.

Dated: June 18, 2021

                                              Respectfully submitted,

                                              Hughes Hubbard & Reed LLP

                                                   s/                                                            
Nicolas Swerdloff  
One Battery Park Plaza  
New York, NY 10004  
Tel: 212-837-6167  
Fax: 305-351-9771  
Email: nicolas.swerdloff@hugheshubbard.com

Michael A. DeBernardis (admitted *pro hac vice*)  
1775 I Street, N.W.  
Washington, D.C. 2006-2401  
Tel: 202-721-4678  
Fax: 202-729-4678  
Email: michael.debernardis@hugheshubbard.com

*Counsel for Plaintiff Syracuse Mountains Corporation*