UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SYRACUSE MOUNTAINS CORPORATION,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**PETRÓLEOS DE VENEZUELA S.A.,**<br><br>　　　　　Defendant. | Docket No.: 1:21-cv-02684-VEC<br><br>ORAL ARGUMENT REQUESTED |

### REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT PETRÓLEOS DE VENEZUELA, S.A.'S <u>MOTION TO DISMISS COMPLAINT</u>

　

HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017

*Attorneys for Defendant*
*Petróleos de Venezuela, S.A.*

Dated: July 1, 2021

## **TABLE OF CONTENTS**

I.   Plaintiff's claims are barred ..................................................................................................1
    A.   Standard of review ...................................................................................................2
    B.   Plaintiff's claims are made under the Indenture .......................................................2
    C.   The Notes are subject to the Indentures, and any suit must be made under the Indentures...................................................................................................................3
    D.   No provision of the Indentures overrules the limitation contained in the Notes .....5
    E.   Plaintiff's failed to comply with the No Action clauses contained in the Indentures ..................................................................................................................................7
II.   CONCLUSION....................................................................................................................8

i

...

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*,
  677 F.3d 1286 (11th Cir. 2012) ...................................................................................................7

*Beal Sav. Bank v. Sommer*,
  8 N.Y.3d 318, 865 N.E.2d 1210 (2007).................................................................................6, 7

*Dunham v. Omaha & Council Bluffs St. Ry. Co.*,
  106 F.2d 1 (2d Cir. 1939)..........................................................................................................6

*In re Enron Corp.*,
  302 B.R. 463 (Bankr. S.D.N.Y. 2003), *aff'd*, 04 CIV. 1367 (NRB), 2005 WL
  356985 (S.D.N.Y. Feb. 15, 2005) ..............................................................................................6

*Friedman v. Chesapeake & Ohio Railway Co.*,
  261 F. Supp. 728, 730 (S.D.N.Y. 1966)............................................................................3, 5, 6

*Lovati v. Petroleos de Venezuela, S.A.*,
  1:19-CV-4799, 2020 WL 5849304 (S.D.N.Y. Sept. 30, 2020) .................................................6

*McMahan & Co. v. Wherehouse Entertainment Inc.*,
  859 F. Supp. 743, 748 (S.D.N.Y. 1994)............................................................................4, 5, 6

Defendant Petróleos de Venezuela, S.A. ("PDVSA") submits this reply memorandum in further support of its motion to dismiss the complaint filed by Plaintiff Syracuse Mountains Corporation ("Syracuse"). Plaintiff's memorandum of law in opposition to PDVSA's motion to dismiss ("Response"), fails to put forward any reason why its claims should not be dismissed.

In its Response, Plaintiff does not deny that the Indentures contain a No Action clause. Syracuse also does not deny that it failed to comply with the No Action clauses, which require 25% of noteholders to notify the Trustee to pursue an action collectively for all noteholders.

Plaintiff instead argues that the lengthy Indentures setting out the terms and conditions of payment of the Notes do not apply at all to its claims, which Plaintiff argues are based only on the Notes, and not the Indentures. *See* Resp. at 1. This argument ignores the commercial reality that each Indenture is a critical and inseparable part of the Note. Plaintiff's argument also ignores the plain language of the Complaint, which relies repeatedly on the terms of the Indentures. And most importantly, Plaintiff's argument ignores — and indeed does not cite once — the provisions of the Notes themselves providing that "Holders may not enforce the Indenture or the Notes except as provided in the Indenture."

Because Plaintiff was required to comply with the Indenture to enforce the Notes, and because Plaintiff admits that it failed to do so, its claims must be dismissed.

**I.     PLAINTIFF'S CLAIMS ARE BARRED**

In a failed effort to save its Complaint from dismissal, Plaintiff argues that its claims to enforce the Notes fall only under the Notes, and are therefore not subject to the Indentures' No Action clauses. As set forth below, Plaintiff could not, and did not, sue PDVSA under the Notes. Because Plaintiff can only enforce the Notes through the Indentures, but has not complied with the Indentures' No Action clause, its claims must be dismissed.

1

### A.     Standard of review

As a threshold matter, Plaintiff does not contest the applicable standard for dismissal of this case. As set forth in PDVSA's memorandum of law in support of its motion to dismiss, where a contract contains an unambiguous condition precedent, a plaintiff must plead compliance with that condition precedent in order to state a breach of contract claim. Plaintiff's failure to do so here is fatal.

### B.     Plaintiff's claims are made under the Indenture

Contrary to Plaintiff's assertion that it sued under the Notes alone, its claims are based on the Indentures, and it relies on the terms of the Indentures throughout its Complaint.

Plaintiff's Complaint alleges that the Notes were "issued . . . pursuant to a series of Indentures." Compl. at 1. It attaches copies of each of the Indentures (but not copies of the Notes themselves) to its Complaint. Compl., Exs. A, B, C, D, and E. It alleges that PDVSA defaulted on payments it promised to make in the Indentures, constituting "an Event of Default under the terms of the Indentures." Compl. at 5. Each of the five counts of breach of contract Plaintiff asserts in the Complaint alleges that the Notes are outstanding "under the terms of the [relevant] Indenture," that an "Event of Default" has occurred "on the terms of the [relevant] adventure," and that "PDVSA has breached its contractual obligations under the terms of the [relevant] Notes and the [relevant] Indenture." *Id.* at 6–8. As relief for these breaches, Plaintiff seeks "payment of the accrued principal and interest of the Notes held by the Plaintiffs, **as provided in the Indentures**." *Id.* at 2 (emphasis added). Plainly, Plaintiff's claims are in fact made under the Indentures.

Plaintiff also relies on the Indentures, not the Notes, to establish jurisdiction and venue. *Id.* at 2 ("This court has personal jurisdiction over PDVSA because … PDVSA consented in Section 10.10(a) of the Indentures to submit to the jurisdiction of this Court."); *id.* at 2–3 ("Venue is proper in this district by agreement of the parties in . . . the Indentures."). Similarly, Plaintiff relies on

the Indentures to argue that PDVSA has waived sovereign immunity. *Id.* at 6. Plaintiff's argument that it can avoid the terms of the Indentures because it sued only under the Notes denies the reality of its pleading.

Plaintiff cannot rely on the Indentures when doing so benefits it, only to ignore the Indenture when it does not like the Indentures' terms. This attempt at artful pleading is analogous to one rejected in *Friedman v. Chesapeake & Ohio Railway Co.*, in which the court dismissed a complaint for failure to comply with a no action clause, rejecting the plaintiffs' arguments that their claims were made only under the bonds and were not subject to the indenture. "That plaintiffs have in fact based their claims on the indenture is abundantly clear on the face of the complaint[,] which plainly invokes the aid of certain provisions of the trust indenture in order to accelerate the maturity of the bonds by the alleged occurrence of events of default." 261 F. Supp. 728, 730 (S.D.N.Y. 1966), *aff'd*, 395 F.2d 663 (2d Cir. 1968).

### C. The Notes are subject to the Indentures, and any suit must be made under the Indentures

Not only did Plaintiff in fact sue under the Indentures, it was required to do so in any action to enforce the Notes. In its Response, Plaintiff characterizes the Notes and the Indentures as two independent contracts under which Plaintiff could choose to sue. In reality, the Indentures and the Notes are inextricably intertwined, and the only way for Plaintiff to enforce the Notes was by complying with the Indentures.

The Indentures are the contractual means by which the Notes were issued. The Indentures establish the full terms and conditions of the Notes, including the respective rights of noteholders, the issuer, and the trustee. *See* Black's Law Dictionary, 9th ed. at 838 (defining a "corporate indenture" as "a document containing the terms and conditions governing the issuance of debt securities"). The Notes themselves reflect this, stating that "The Issuer issued the Notes under an

Indenture." Compl., Ex. A (April 2007 Indenture, Form of Reverse of Note) at 64; Ex. B (February 2011 Indenture, Form of Reverse of Note) at 79; Ex. C (November 2011 Indenture, Form of Reverse of Note) at 80; Ex. D (May 2012 Indenture, Form of Reverse of Note) at 78; Ex. E (November 2013 Indenture, Form of Reverse of Note) at 80.

The Notes also reflect, contrary to what Plaintiff now argues, that the Notes do not stand alone on their own terms, but instead incorporate all of the terms and restrictions of the Indenture: "The terms of the Notes include those stated in the Indenture. The Notes are subject to all such terms. . . . Each Holder, by accepting a Note, agrees to be bound by all of the terms and provisions of the Indenture." *Id.*

Critically, the Notes do not permit noteholders to ignore the Indenture and enforce the Notes by suing on the Notes themselves, as Plaintiff now attempts to argue. Each of the Notes provides that "Holders may not enforce the Indenture or the Notes **except as provided in the Indenture**." Ex. A at 66 (April 2007 Indenture, Form of Reverse of Note); Ex. B (February 2011 Indenture, Form of Reverse of Note) at 81; Ex. C (November 2011 Indenture, Form of Reverse of Note) at 82; Ex. D (May 2012 Indenture, Form of Reverse of Note) at 80; Ex. E (November 2013 Indenture, Form of Reverse of Note) at 83 (emphasis added). Not surprisingly, Plaintiff ignores this language in its Response because it is fatal to Plaintiff's action.

Courts have repeatedly held that provisions like this one prohibit Noteholders from suing directly under the Notes. In *McMahan & Co. v. Wherehouse Entertainment Inc.*, the plaintiff, like Syracuse here, argued that it did not have to comply with a no action clause contained in a Debenture. 859 F. Supp. 743, 748 (S.D.N.Y. 1994), *aff'd in part, rev'd in part*, 65 F.3d 1044 (2d Cir. 1995). The underlying Securities, like the Notes here, stated that "Securityholders may not enforce . . . the Securities except as provided in the Indenture." *Id.* The court rejected the

4

plaintiff's arguments, stating that "Plaintiffs here, by the plain terms of the Debentures, are forced to rely on the Indenture to enforce their securities," and therefore must comply with the no action clause. *Id.*

The same situation arose in *Friedman*, in which the plaintiffs tried to sue directly on a set of bonds without complying with the restrictions contained in the accompanying indenture. 261 F. Supp. at 730. The court held that the bonds were subject to the indenture, and dismissed the claims because the plaintiffs had failed to comply with the indenture's terms:

> The bonds, on their face, clearly refer to the indenture and expressly notify plaintiffs and all holders that 'in case an event of default, as defined in the Indenture, shall occur, the principal of the Bonds may be declared, or may become, due and payable, in the manner and with the effect provided in the Indenture.' Plaintiffs are thus forced to rely on the indenture in order to accelerate the time of payment.

*Id.*

### D. No provision of the Indentures overrules the limitation contained in the Notes

Plaintiff has not identified, either in its Complaint or in its Response, any provision of the Indenture overruling the requirement that noteholders enforce the Notes through the Indentures alone. In its Response, Plaintiff points only to the Cumulative Rights and Remedies section of the Indentures, which states:

> <u>Cumulative Rights and Remedies</u>. Except as otherwise provided with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes, no right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by Applicable Law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Compl., Ex. A at § 5.1(k); Exs. B–E at § 5.01(l).

Plaintiff asserts in its Response that this provision "recognizes that noteholders have rights under the Notes." Resp. at 8. Yet the plain language of this provision does not refer to any rights

5

under the Notes, much less create any independent cause of action under the Notes.[1]  Instead, it merely provides that the exercise by the trustee or noteholders of any right under the Indentures does not preclude the later exercise of any other rights that the trustee or noteholders might have.

Courts have repeatedly rejected plaintiffs' attempts to rely on cumulative remedies clauses to create new rights beyond those stated in the contract itself.  Cumulative remedies clauses preserve existing rights, but do not create new ones, and cannot eliminate other provisions containing explicit limitations on the right to sue.  *See Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 329–30, 865 N.E.2d 1210, 1217 (2007) (holding that cumulative remedies provision did not create a new right of action permitting a single lender to enforce a loan individually, when the contract itself required lenders to act collectively); *In re Enron Corp.*, 302 B.R. 463, 475 (Bankr. S.D.N.Y. 2003), *aff'd*, 04 CIV. 1367 (NRB), 2005 WL 356985 (S.D.N.Y. Feb. 15, 2005) (cumulative rights provision preserved existing alternate remedies, but did not create new rights and "should not be taken out of context and interpreted in a manner that will thwart the overall contract scheme" (internal quotation omitted)).

Plaintiff's strained interpretation of the cumulative remedies clause is inconsistent with the rules of contract interpretation under New York law.  Under New York law, "[a] reading of the contract should not render any portion meaningless.  Further, a contract should be read as a whole

---

[1] Judge Carter correctly found in *Lovati* that no part of the indenture, including the "Cumulative Rights and Remedies" provision, conferred any note-based enforcement rights on the noteholders.  *See Lovati v. Petroleos de Venezuela, S.A.*, 1:19-CV-4799 (ALC), 2020 WL 5849304, at *5 (S.D.N.Y. Sept. 30, 2020) ("the Indenture does not confer Note-based enforcement rights").  However, Judge Carter erred in concluding that the noteholders had "already-existing common law right[s]" to enforce the notes.  *Id.*  As discussed in Section I.B above, any such right that Noteholders like Syracuse had to enforce the Notes was limited by the plain language of the Notes themselves, which state that "Holders may not enforce the Indenture or the Notes **except as provided in the Indenture**." (emphasis added).  *See Dunham v. Omaha & Council Bluffs St. Ry. Co.*, 106 F.2d 1, 2 (2d Cir. 1939) (holding that language in a bond stating that the consequences of default are as provided in an indenture "is sufficient to modify the prior unconditional promise to pay the bonds at maturity to the extent that the [indenture] language expressly does so."); *McMahan*, 859 F. Supp. at 748 ("Plaintiffs here, by the plain terms of the Debentures, are forced to rely on the Indenture to enforce the securities."); *Friedman*, 261 F. Supp. at 730 ("The quoted reference is definite and fairly places the bondholder on notice that his rights to sue before the stated maturity date are restricted and conditioned by the indenture.").

. . . and if possible it will be so interpreted as to give effect to its general purpose." *Beal*, 8 N.Y.3d 324–25; 865 N.E.2d 1213–14 (internal citations omitted). Plaintiff seeks a result that would permit it to sue on the Notes without complying with any of the conditions in the Indentures to which the Notes are subject. Such an outcome would render the Indentures — and the express restrictions on individual suits that they contain — meaningless. It would also defeat the purpose of the No Action clauses, permitting Plaintiff to circumvent the requirement for Noteholders to act collectively through the Trustees, and instead encourage individual noteholders to race to the courthouse to jump in line first, ahead of other similarly situated noteholders. *See Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1296 (11th Cir. 2012) (purposes of no action clauses include protecting from a multiplicity of lawsuits, deterring suits brought by the minority, and preventing "rash, precipitate, or harassing suits by bondholders who disrupt corporate affairs" (quoting *Watts v. Missouri–Kansas–Texas R.R. Co.*, 383 F.2d 571, 574 (5th Cir. 1967); citing *Quirke v. St. Louis–San Francisco Ry. Co.*, 277 F.2d 705, 709 (8th Cir. 1960)). Plaintiff's interpretation of the Indentures, like the result it seeks, cannot be sustained.

### E. Plaintiff's failed to comply with the No Action clauses contained in the Indentures

Much of Plaintiff's Response is devoted to arguing that the No Action clauses in the Indentures are narrow and only restrict claims under the Indentures, not claims under the Notes. As evidenced by the above, the No Action clauses only refer to the Indentures because any action to enforce the Notes must be made under the Indentures. Plaintiffs' reliance on cases like *Quadrant* distinguishing between broad and narrow No Action clauses is irrelevant, since Plaintiff's claims must, and do, rely on the Indentures.

To avoid dismissal under Rule 12(b)(6), Plaintiff was therefore required to plead that it complied with the terms of the No Action clause. In its Response, Plaintiff does not deny that it

7

failed to comply with the conditions of the No Action clause. Because Plaintiff's Complaint fails to plead compliance with a condition precedent, Plaintiff's claims must be dismissed.

## II.     CONCLUSION

For the foregoing reasons and those stated in PDVSA's memorandum of law in support of its motion to dismiss, Defendant PDVSA respectfully requests that this Court dismiss the Complaint with prejudice for failure to state a claim, and grant any other relief that the Court shall deem appropriate.


Dated: July 1, 2021                              Respectfully submitted,
       New York, New York
                                                 **HOGAN LOVELLS US LLP**

                                                 By:    */s/ Dennis H. Tracey*
                                                        Dennis H. Tracey
                                                        390 Madison Avenue
                                                        New York, NY 10017
                                                        Phone: (212) 918-3000
                                                        Fax:    (212) 918-3100

                                                        Richard Lorenzo (admitted *pro hac vice*)
                                                        600 Brickell Avenue, Suite 2700
                                                        Miami, FL 33131
                                                        Phone: (305) 459-6500
                                                        Fax:    (305) 459-6550
                                                        richard.lorenzo@hoganlovells.com

                                                        Catherine Bratic (admitted *pro hac vice*)
                                                        609 Main Street, Suite 4200
                                                        Houston, TX 77002
                                                        Phone: (713) 632-1400
                                                        Fax:    (713) 632-1401
                                                        catherine.bratic@hoganlovells.com

                                                        *Counsel for Defendant*
                                                        *Petróleos de Venezuela, S.A.*

8