**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SYRACUSE MOUNTAINS CORPORATION, | Case No.: 1:21-cv-02684-VEC |
| Plaintiff, | |
| v. | ORAL ARGUMENT REQUESTED |
| PETRÓLEOS DE VENEZUELA, S.A. | |
| Defendant. | |

# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

                                                            **Page**

I. INTRODUCTION .................................................................................................................. 1

II. AS ADDRESSED IN PDVSA'S MOTION, THE TRANSFER OF NOTES TO SYRACUSE IS VOID FOR VIOLATION OF NEW YORK'S CHAMPERTY LAW .................................................................................................................................. 1

III. SYRACUSE INCORRECTLY CALCULATES PRE-JUDGMENT INTEREST AND THE AMOUNT OF DAMAGES REQUESTED MUST BE REDUCED .............. 5

IV. CONCLUSION....................................................................................................................... 5

## TABLE OF AUTHORITIES
Page(s)

**Cases**

*Aretakis v. Caesars Ent.*,
   No. 16 Civ. 8751 (KPF), 2018 WL 1069450 (S.D.N.Y. Feb. 23, 2018) ............................. 2, 3

*Justinian Capital SPC ex rel. Blue Heron Segregated Portfolio v. WestLB AG*,
   43 Misc. 3d 598 (N.Y. Sup. Ct. 2014), *aff'd* 28 N.Y.3d 160 (2016) ...................................... 2, 4

*BSC Assocs., LLC v. Leidos, Inc.*,
   91 F. Supp. 3d 319 (N.D.N.Y. 2015) ........................................................................................ 2, 4

*Justinian Capital SPC v. WestLB AG*,
   28 N.Y.3d 160 (2016) ............................................................................................................ 2, 3, 4

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
   612 F. Supp. 3d 263 (S.D.N.Y. 2020) ........................................................................................... 2

*Semi-Tech Litig., LLC v. Bankers Tr. Co.*,
   272 F. Supp. 2d 319 (S.D.N.Y. 2003) ........................................................................................... 2

*Trust for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. Mortg. Pass-Through Certificates, Series 1999-C1 v. Love Funding Corp.*,
   13 N.Y.3d 190, 195 (2009) ............................................................................................................ 4

**Statutes**

N.Y. Jud. Law § 489(1) ........................................................................................................................ 2

N.Y. Jud. Law § 489(2*)* ...................................................................................................................... 4

**Other Authorities**

*How to Calculate Post Judgment Interest*, United States District Court for the
   Southern District of New York ...................................................................................................... 5

CPLR § 5001(c) ..................................................................................................................................... 5

CPLR § 5001(c), Comment 5001:23 (McKinney) ............................................................................... 5

ii

Defendant PDVSA[1] respectfully submits this memorandum of law in opposition to Syracuse's motion for summary judgment (ECF No. 123) (the "Motion").

I. **INTRODUCTION**

Syracuse is not a company that has existed for decades.  Syracuse is not a company that has its own, long-standing business model in distressed debt.  Syracuse is not a company that bought or merged with other companies that owned the Notes.  Rather, Syracuse is a shell company formed shortly before commencing this lawsuit for the stated purpose of "collectively enforcing [the Shareholders'] rights under the notes and the relevant indentures."  Indeed, Syracuse itself admits that it acquired the Notes "just for the purpose of this litigation" so that the Shareholders "could collectively have a stronger negotiating position . . . and could efficiently share costs."  As detailed in PDVSA's cross motion for summary judgment (ECF Nos. 124-38) ("PDVSA's Motion"),[2] these transfers, made with the primary purpose of bringing this litigation, are void under New York's champerty law and therefor the Motion must be denied.

Separately, Syracuse incorrectly calculates pre-judgment interest and seeks nearly $8 million in damages more than it should.

II. **AS ADDRESSED IN PDVSA'S MOTION, THE TRANSFER OF NOTES TO SYRACUSE IS VOID FOR VIOLATION OF NEW YORK'S CHAMPERTY LAW**

While Syracuse claims to have standing and contracts with PDVSA (Motion at 10), Syracuse ignores that the transfers of Notes from the Shareholders to Syracuse were made in violation of New York's champerty statute and are therefore void.

---

[1] Capitalized terms not defined herein shall have the same meaning as ascribed to them in PDVSA's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (ECF No. 133).

[2] For efficiency, PDVSA incorporates into this opposition its motion for summary judgment, which seeks judgment in its favor on the basis of champerty.

1

Any claim arising from a champertous transfer is void. *See Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 281 (S.D.N.Y. 2020); *Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 272 F. Supp. 2d 319, 331 (S.D.N.Y. 2003). A transfer is champertous where the transfer was made "with the intent and for the purpose of bringing an action or proceeding thereon." N.Y. Jud. Law § 489(1). The critical inquiry in assessing whether an assignment is champertous under New York law is whether "'the *primary purpose* . . . behind [the plaintiff's] acquisition of rights'" is "'to enable [one] to bring a suit . . . .'" *Justinian Capital SPC v. WestLB AG*, 28 N.Y.3d 160, 166-67 (2016) ("*Justinian II*") (alterations and emphasis in original) (quoting *Moses v. McDivitt*, 88 N.Y. 62, 65 (1882)). Litigation by proxy is indicative of a champertous "primary purpose" under New York law. *See Justinian Capital SPC ex rel. Blue Heron Segregated Portfolio v. WestLB AG*, 43 Misc. 3d 598, 607 (N.Y. Sup. Ct. 2014) ("*Justinian I*") ("[I]t is champerty to sue . . . for a debt that is not really your own. [This] is litigation by proxy and prohibited by section 489."), *aff'd* 28 N.Y.3d 160 (2016).

Courts therefore regularly dismiss claims that assignors have transferred to plaintiffs in exchange for a share of any litigation proceeds and/or to avoid certain undesirable consequences of litigating the claims themselves. *See, e.g.*, *Justinian II*, 28 N.Y.3d 160, 170-71; *Aretakis v. Caesars Ent.*, No. 16 Civ. 8751 (KPF), 2018 WL 1069450 at *10 (S.D.N.Y. Feb. 23, 2018). This is particularly true in circumstances where the claims are assigned to a shell corporation that itself was created prior to the commencement of the underlying litigation. *See, e.g.*, *Justinian II*, 28 N.Y.3d 160; *BSC Assocs., LLC v. Leidos, Inc.*, 91 F. Supp. 3d 319 (N.D.N.Y. 2015).

Here, Syracuse admitted it was created for the primary purpose of litigation in order to more efficiently handle this case financially and to hide the identities of the UBOs. *See, e.g.*, Broughel Decl. Ex. 6 ("30(b)(6) Tr.") 18:10-19:9 ("Syracuse was incorporated just for the

purpose of this litigation."). And, in support of its Motion, Syracuse acknowledges that "Syracuse was created in order for *its shareholding companies* to collectively *enforce their rights* under the notes and relevant indentures." Cunha Decl. (ECF No. 126) ¶ 5. Syracuse further admits that the Shareholders transferred the Notes to Syracuse to avoid certain undesirable consequences of litigating the claims themselves. *See* 30(b)(6) Tr. 18:10-19:9 (Shareholders transferred Notes to Syracuse to "[p]erhaps save money" and "just have one company to do the work for all of [the UBOs]."), 169:21-171:11 (The UBOs had an acute interest in keeping their involvement in any lawsuit private for fear of possible "threats against [them] or [their] famil[ies]."); Cunha Decl. (ECF No 126) ¶ 5 (shareholders combined and transferred notes to Syracuse to "have a stronger negotiating position" and "efficiently share costs"); *cf. Justinian II*, 28 N.Y.3d at 166-68 (holding transfer champertous where assignor initiated transfer to keep its name off of any lawsuit); *Aretakis*, 2018 WL 1069450 at *10 (holding transfer champertous where assignor initiated transfer to "avoid [the] 'anxiety, annoyance, [and] frustration'" of litigating its claims).

Moreover, Syracuse does not have any independent business interest in the Notes. *See* 30(b)(6) Tr. 29:5-9 (admitting that "Syracuse doesn't engage in any business activities"), 143:19-144-2 (admitting that Syracuse is not "able to sell" the Notes because the Notes do not "belong to Syracuse directly"), 144:6-11 (admitting that "Syracuse has no interest in making one cent . . . from the notes"). And Syracuse did not even try to negotiate before bringing this lawsuit. *See* 30(b)(6) Tr. 147:8-148:19. Syracuse exists, and the Notes were transferred to it, simply for the primary purpose of litigation in order to make the Shareholders' and UBOs' lives easier.

In sum, while each Shareholder could have brought a claim against PDVSA, the UBOs wanted to hide their identities, pool resources, and use one company for the litigation, so they

created a shell company just for that purpose, transferred the Notes, and sued. 30(b)(6) Tr. 18:10-19:9, 169:21-171:11. Under New York champerty law, the claim is therefore barred as a matter of law.

Finally, the statutory exception to champerty does not apply here.[3] PDVSA's Motion at 17-19; *see also* N.Y. Jud. Law § 489(2*)* (exempting transfers completed in exchange for an aggregate purchase price of at least $500,000). The exception requires the actual, binding transfer or pledge of something valued at $500,000 or more at the time of the transfer—a promise to remit the proceeds of the underlying litigation, if successful, *does not suffice*. *Justinian II*, 28 N.Y.3d at 168, 170. Syracuse concedes, however, that it paid *nothing* for the Notes and instead the Shareholders only received capital participation in Syracuse itself. 30(b)(6) Tr. 122:13-17; Broughel Decl. Ex. 13 at Admission No. 4; *see also* Cunha Decl. (ECF No. 126) ¶ 4 (The Shareholders "transferred their notes to Syracuse in exchange for a pro rata shareholding in Syracuse."). In other words, the Shareholders will only receive payment from Syracuse *if Syracuse is successful in this litigation*, which the New York Court of Appeals has already determined is insufficient to trigger the champerty statute's exception. *Justinian II*, 28 N.Y.3d at 171. As more fully explained in PDVSA's Motion, because Syracuse's acquisition of the Notes violated New York's champerty law, the transfer was void, Syracuse has no standing to sue, and therefore Syracuse's Motion must be denied.

---

[3] While courts have occasionally provided another exception where the transferee "holds a preexisting proprietary interest" in the underlying instrument, such an exception does not apply here either. PDVSA's Motion at 14-17; *Trust for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. Mortg. Pass-Through Certificates, Series 1999-C1 v. Love Funding Corp.*, 13 N.Y.3d 190, 195 (2009). Syracuse is a shell company created shortly before filing this lawsuit simply to receive the Notes and pursue this litigation—Syracuse does not even have effective control of the Notes. *See* PDVSA's Motion at 16-17; *see also* 30(b)(6) Tr. 31:13-16, 143:19-144:11; *cf. BSC Assocs.*, 91 F. Supp. 3d 319, 327-29; *Justinian I*, 43 Misc. 3d at 606.

### III. SYRACUSE INCORRECTLY CALCULATES PRE-JUDGMENT INTEREST AND THE AMOUNT OF DAMAGES REQUESTED MUST BE REDUCED

In the event the Court grants Syracuse's Motion, the Court should direct the clerk of the court to correct Syracuse's damages calculations. CPLR section 5001(c) specifies that "the amount of interest shall be computed by the clerk of the court." CPLR § 5001(c); *see also id*. at Comment 5001:23 (McKinney) ("The calculations are typically performed by the clerk"). This calculation "applies the rate of interest to the time that has elapsed between the fixed date of accrual and the date of the verdict, report, or decision. It comes down to 4th grade math." CPLR § 5001 at Comment 5001:23; *cf. How to Calculate Post Judgment Interest*, United States District Court for the Southern District of New York (https://www.nysd.uscourts.gov/forms/how-calculate-post-judgment-interest) (providing simple step-by-step guide for calculating interest).

Syracuse's Motion provides no explanation for how it calculated pre-judgment interest. *See* Cunha Decl. Ex. 2 (ECF No. 126). Nor can PDVSA determine what formula Syracuse used. What is clear is that the math is wrong. The correct calculations are detailed in the spreadsheet attached to Exhibit 30 (the "Spreadsheet") of the Broughel Opposition Declaration, dated September 29, 2023 ("Broughel Opp. Decl."). The Spreadsheet lays out in detail all of the steps and amounts[4] to calculate pre-judgment interest, and shows that Syracuse's calculations inflate damages by nearly $8 million. Broughel Opp. Decl Ex. 30 at 1.

### IV. CONCLUSION

For the reasons stated above, Syracuse's Motion for Summary Judgment should be denied.

---

[4] PDVSA and Syracuse seemingly do not disagree on the calculations of the semi-annual interest payments, the dates they were due, or the interest rates. The difference in amounts merely concerns that math for calculating the pre-judgment interest.

5

| | |
|---|---|
| Dated: September 29, 2023<br>New York, New York | **PAUL HASTINGS LLP**<br><br> *s/ Kurt W. Hansson*   <br>Kurt W. Hansson<br>Kevin P. Broughel<br>James L. Ferguson<br>Zachary D. Melvin<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: 212-318-6000<br>Facsimile: 212-319-4090<br>kurthansson@paulhastings.com<br>kevinbroughel@paulhastings.com<br>jamesferguson@paulhastings.com<br>zacharymelvin@paulhastings.com<br><br>*Counsel for Defendant Petróleos de Venezuela, S.A.* |