UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SYRACUSE MOUNTAINS CORPORATION,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>PETRÓLEOS DE VENEZUELA, S.A.<br><br>　　　　　　　　　　Defendant. | Case No.: 1:21-cv-02684-VEC<br><br><br>ORAL ARGUMENT<br>REQUESTED |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. THE ARGUMENT THAT CHAMPERTY IS LIMITED TO "OBTAINING COSTS" WAS ALREADY "REJECT[ED]" IN *JUSTINIAN II* ......................................... 2

III. SYRACUSE'S PRIMARY PURPOSE IN ACQUIRING THE NOTES WAS TO LITIGATE ON THEM AS THE SHAREHOLDERS' PROXY ......................................... 4

    A. The Facts Syracuse Cites Are Irrelevant to Determine Primary Purpose .............. 4

    B. Syracuse's Attempts to Distinguish *Justinian* Are Meritless And Irrelevant ........ 6

    C. Syracuse Directs this Court to Completely Inapposite Cases ................................ 8

IV. SYRACUSE EXCHANGED NO VALUE FOR THE NOTES, ONLY EQUITY IN ITSELF—A SHELL COMPANY WHOSE VALUE IS ENTIRELY CONTINGENT ON THE VERY CONSIDERATION THE SHAREHOLDERS TRANSFERRED ........................................................................................................ 9

V. CONCLUSION ............................................................................................................. 10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*20 Cap Fund I, LLC v. Sookhai*,
    2017 WL 8218894 (N.Y. Sup. Ct. Dec. 22, 2017) ...............................................................9

*Aretakis v. Ceasars Ent.*,
    2018 WL 1069450 (S.D.N.Y. Feb. 23, 2018)......................................................................2

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
    94 N.Y.2d 726 (2000) ......................................................................................................1, 7

*Elliott Assocs., L.P. v. Banco de la Nacion*,
    194 F.3d 363 (2d Cir. 1999)................................................................................................7

*Justinian Capital SPC ex rel. Blue Heron Segregated Portfolio v. WestLB AG*,
    43 Misc. 3d 598 (N.Y. Sup. Ct. 2014). ...................................................................3, 7, 8, 9

*Justinian Capital SPC v. WestLB AG*,
    28 N.Y.3d 160 (2016) ................................................................................................ passim

*Leasing Control Inc. v. 500 Fifth Ave., LLC*,
    142 N.Y.S.3d 807 (1st Dep't 2021) ....................................................................................9

*Mack v. United States*,
    814 F.2d 120 (2d Cir. 1987)................................................................................................5

*Mattera v. JP Morgan Chase Corp.*,
    740 F. Supp. 2d 561 (S.D.N.Y. 2010).................................................................................9

*Mazzini v. Republic of Argentina*,
    2005 WL 743090 (S.D.N.Y. Mar. 31, 2005).......................................................................8

*Omnipoint Commc'ns, Inc. v. Common Council of City of Peekskill*,
    202 F. Supp. 2d 210 (S.D.N.Y. 2002).................................................................................9

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
    612 F. Supp. 3d 263 (S.D.N.Y. 2020).................................................................................4

*RSS WFCM2018-C44-NY LOD, LLC v. 1442 Lexington Operating DE LLC*,
    2021 WL 5745927 (S.D.N.Y. Dec. 2, 2021) ...............................................................2, 3, 8

*Sharbat v. Iovance Biotherapeutics, Inc.*,
    2023 WL 34377 (S.D.N.Y. Jan. 4, 2023) ................................................................... passim

## TABLE OF AUTHORITIES

**Page(s)**

*Tr. for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*,
    13 N.Y.3d 190 (2009) ...........................................................................................2, 3, 4, 7

*Universal Inv. Advisory SA v. Bakrie Telecom PTE, Ltd.*,
    154 A.D.3d 171 (1st Dep't 2017) ..................................................................................6

**Statutes**

N.Y. Jud. Law § 489 ...........................................................................................................2, 3, 9

**Other Authorities**

Brief of Plaintiff-Appellant, *Justinian Capital SPC v. WestLB AG*,
    APL-2015-00231 (N.Y., Oct. 26, 2015) ...............................................................6, 7, 8

Defendant PDVSA[1] respectfully submits this reply in support of its motion for summary judgment (ECF Nos. 128-134) (the "Motion").

I. **INTRODUCTION**

Syracuse's Opposition[2] misrepresents controlling authority and ignores Syracuse's own admissions. This is unsurprising as *Justinian II* and Syracuse's uncontroverted 30(b)(6) testimony dictate that PDVSA should respectfully be granted summary judgment.

First, Syracuse points to pre-*Justinian II* cases to claim the champerty statute is so narrow that it only applies to litigation pursued to obtain costs. But *Justinian II* explicitly rejected this argument, and found the statute prohibits litigation by proxy, as is occurring here.

Second, Syracuse claims that its primary purpose was not litigation. This is revisionist history. Syracuse without qualification admitted it was formed "for the purpose of this litigation." Syracuse's responses now are either irrelevant, misrepresent *Justinian*, or are directly contradicted by Syracuse's prior testimony.

Finally, Syracuse argues the champerty safe harbor applies because it gave the Shareholders pro-rata shares in itself in exchange for the Notes. *Justinian II* disposes of this argument. The shares are not *bona fide* value Syracuse gave to the Shareholders. There is no "skin in the game" such that Syracuse must give Shareholders something they did not already have. The Shareholders are in the exact same position they were before: with rights and a promise of value equal to the Notes they gave Syracuse. All the Shareholders may receive are the proceeds from litigation. PDVSA's summary judgment motion should be granted.

---

[1] Capitalized terms not defined herein shall have the meaning as ascribed to them in the Motion (ECF No. 133). Contemporaneously, PDVSA files its Response to Syracuse's Counterstatement and Response to Defendant's Statement of Material Facts (the "Reply SOMF").

[2] "Opposition" or "Opp." refers to Syracuse's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (ECF No. 139).

1

## II. THE ARGUMENT THAT CHAMPERTY IS LIMITED TO "OBTAINING COSTS" WAS ALREADY "REJECT[ED]" IN *JUSTINIAN II*

Syracuse argues that New York's champerty statute (N.Y. Jud. Law § 489) is limited only to claims pursued for "securing" or "obtaining costs," because "the purpose of the statute was to prevent attorneys, etc., from purchasing things in action for the purpose of obtaining costs by the prosecution thereof." Opp. at 7-9 (quotation omitted); Opp. at 9 ("Section 489 turns on whether the 'primary purpose' of the acquisition was to bring a lawsuit (*in order to obtain costs*)") (emphasis added); Opp. at 14 (concluding "Syracuse's claims were not 'stirred up in an effort to secure costs.'"); *see also* Opp. at 10 (citing *Tr. for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 200 (2009)); Opp. at 13 (quoting *Love Funding*, 13 N.Y.3d at 201).

Syracuse's argument is frivolous. *Justinian II* already "reject[ed]" this exact argument as outdated and overly narrow:

> *We reject Justinian's contention that Judiciary Law § 489 has no application unless the underlying claim* is frivolous or *was brought by Justinian to secure "costs."* Justinian's contention is based on certain language in *Love Funding*. . . . The reference in *Love Funding* to litigation being "'stirred up . . . in [an] effort to secure costs'" (*Love Funding*, 13 NY3d at 201, quoting *Wightman v Catlin*, 113 App Div 24, 28 [2d Dept 1906]) harks back to earlier cases, from before 1907, when "the prohibition of champerty was limited in scope and largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs, which, at the time, included attorneys' fees" (*Bluebird Partners*, 94 NY2d at 734 [emphasis added]). *Thus, the reference to champerty as a vehicle to obtain costs has no application to a company such as Justinian, which is not a law firm and would not obtain attorneys' fees by virtue of bringing the lawsuit.*

*Justinian II*, 28 N.Y.3d 160, 167 n.3 (2016) (emphasis added); *see also Aretakis v. Ceasars Ent.*, 2018 WL 1069450, at *9 n.8 (S.D.N.Y. Feb. 23, 2018) (rejecting exact argument); *Sharbat v. Iovance Biotherapeutics, Inc.*, 2023 WL 34377, at *16-17 (S.D.N.Y. Jan. 4, 2023) (same).

Indeed, all of Syracuse's citations regarding this purported ultra-narrow scope pre-date *Justinian II*. Opp. at 7-9. The only post-*Justinian* case in the entire Opposition is *RSS*

2

*WFCM2018-C44-NY LOD, LLC v. 1442 Lexington Operating DE LLC* ("*1442 Lex*"). But in *1442 Lex*, the Court only briefly addressed champerty, and merely quoted the language from *Love Funding* regarding "secur[ing] costs"—the very language and citation rejected in *Justinian II*. Compare *1442 Lex*, 2021 WL 5745927, at *3 (S.D.N.Y. Dec. 2, 2021) *with Justinian II*, 28 N.Y.3d at 167 n.3; *see also* Opp. at 13; *infra* at III.C (further distinguishing *1442 Lex*).

Instead, *Justinian II* directs that the relevant champerty inquiry is whether the "primary purpose" of the transaction at issue is to file suit. 28 N.Y.3d at 166-67 ("the purpose behind [the plaintiff's] acquisition of rights is the critical issue in assessing whether such acquisition is champertous") (quotation omitted). Specifically, to constitute champerty, "the foundational intent to sue on that claim must at least have been the primary purpose for, if not the sole motivation behind, entering into the transaction." *Id.* at 167-68 (where "the lawsuit was not merely an incidental or secondary purpose of the assignment, but its very essence," the transfer is champertous). This includes not just attorneys obtaining claims to pursue costs, but also a party litigating claims that are not its own, *i.e.*, litigation by proxy. *See id.* at 166 (Justinian's acquisition "was champertous because Justinian had not made a bona fide purchase of the notes and was, therefore, suing on a debt it did not own"). New York courts have delineated between situations where a plaintiff was simply "protect[ing] [its] independent right[s] [as] the assignee," *Love Funding Corp.*, 13 N.Y.3d at 199, and circumstances like this case, where the plaintiff was "su[ing] on behalf of another." *Justinian I*, 43 Misc. 3d 598, 607 (N.Y. Sup. Ct. 2014); *see* Reply SOMF ¶¶ 101, 106. "The latter is litigation by proxy and prohibited by § 489." *Id.* As such, PDVSA is entitled to summary judgment on its champerty defense.

3

### III. SYRACUSE'S PRIMARY PURPOSE IN ACQUIRING THE NOTES WAS TO LITIGATE ON THEM AS THE SHAREHOLDERS' PROXY

Syracuse makes three additional arguments opposing PDVSA's summary judgment motion: (1) litigation was not Syracuse's primary purpose, (2) *Justinian II* is distinguishable, and (3) two decisions of this Court are more analogous. Opp. at 10-14. Each fails.

#### A. The Facts Syracuse Cites Are Irrelevant to Determine Primary Purpose

Syracuse states that "any recovery of the amounts due on the Notes will be paid in its entirety to the Shareholders, *each of which had a pre-existing interest in the Notes*," and therefore "Syracuse did not bring this action to obtain costs or make money from the litigation."[3] Opp. at 10 (relying on *Love Funding Corp.*, 13 N.Y.3d at 200) (emphasis added).

The problem with Syracuse's argument is that *Syracuse* does not have a pre-existing interest in the Notes. This Court already expressly rejected this precise distortion of *Love Funding*[4] in *Sharbat*, wherein this Court concluded on a motion for sanctions that the plaintiff—a shell company created by its shareholders—"had no such [pre-existing] interest in the [underlying agreement] since it was not formed until ten years after the execution of the [agreement]." 2023 WL 34377, at *16; *see also id.* ("[T]he fact that assignors and assignee, here, are owned and managed in part by the same individuals does not enable [plaintiff]—a

---

[3] As addressed *supra* at II, there is no merit to any distinction between cases brought to "obtain costs" and those brought for litigation by proxy—both are champertous.

[4] The Opposition repeatedly cites to *Love Funding*, including for the principle that acquiring "a right in order to enforce it" is not champertous, but *Love Funding* is inapposite. *See* Opp. at 10. The plaintiff in *Love Funding* was suing to recover on claims in a conduit-lending arrangement pursuant to which it *had already received, prior to any default,* "title to the underlying mortgages." Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n, 612 F. Supp. 3d 263, 286 (S.D.N.Y. 2020) (emphasis added) (describing "the unique facts in the . . . *Love Funding* opinions"); *see also Love Funding*, 13 N.Y.3d at 201-02. The plaintiff was, in effect, enforcing its own pre-existing interest under the conduit-lending arrangement. It was not, as Syracuse is here, attempting to enforce the pre-existing interest of its assignor on its assignor's behalf.

4

distinct and newly created entity—to share in [its assignors'] *pre-existing* interest . . . .") (emphasis in original). Central to this Court's determination was the fact that the plaintiff was to "share all recoveries from prosecution of the [instant action] . . . ." *Id.* at *15 (alterations in original). That purpose—*i.e.*, "to share all recoveries"—made clear that "the purpose of the Assignment [was] . . . to give [the plaintiff] standing to litigate the [underlying] breach of contract claim," not to enforce a legitimate right or interest. *Id.* at *15-16.

Next, Syracuse points to the Demand Letters as proof that its primary purpose in acquiring the Notes was not litigation. Opp. at 11. The Demand Letters, however, establish nothing regarding the primary purpose. Syracuse could have sent the Demand Letters as a prefatory step to litigation[5] as much as it sent them for another purpose, but this Court need not address that issue, because Syracuse has already admitted that it was created for the purpose of this litigation and was already preparing for litigation before the Demand Letters were sent. 30(b)(6) Tr. 18:10-17; *see also* Reply SOMF ¶ 94; Broughel Decl. Ex. 18 at SNB2900 (email from HHR sent over two weeks *before* the Demand Letters mentioning preparing and filing complaint); *Mack v. United States*, 814 F.2d 120, 124-25 (2d Cir. 1987) (party's assertions that contradict prior deposition testimony should be disregarded).[6] Syracuse cannot now cite to the Demand Letters in an effort to retroactively assert that Syracuse acquired the Notes for a purpose other than litigation. *See Justinian II*, 28 N.Y.3d at 167-68 (concluding Justinian's post-hoc

---

[5] This Court's ruling on the "no-action" clauses has no bearing on the reason *why* Syracuse sent the Demand Letters *at the time*. Compare ECF No. 28 (dated October 12, 2021) *with* Broughel Decl. Exs. 19-21 (dated February 2, 2021).

[6] Syracuse asserts PDVSA "cherry-picked" statements from its 30(b)(6) deposition (Opp. at 10 n.2), but Syracuse's 30(b)(6) representative was asked if Syracuse was incorporated "just for the purpose of this litigation," and the representative answered, "Yes." 30(b)(6) Tr. 18:10-17.

"speculation" on other possible sources of recovery "does not suffice to defeat summary judgment"); *infra* at III.B.[7]

### B.     Syracuse's Attempts to Distinguish *Justinian* Are Meritless And Irrelevant

Syracuse asserts "the record in *Justinian II* references no actions that Justinian took to enforce the debt instruments prior to commencing litigation." Opp. at 12. This is false. Justinian argued that it attempted to contact WestLB prior to litigation in order to "try and negotiate with WestLB." *See, e.g.,* Brief of Plaintiff-Appellant, *Justinian Capital SPC v. WestLB AG*, APL-2015-00231 at 38 (N.Y., Oct. 26, 2015) ("Justinian Br.") (Justinian made multiple phone calls and left messages, in effort to negotiate prior to litigation); *Justinian II*, 28 N.Y.3d at 173 (Stein, J., dissenting). The New York Court of Appeals still affirmed summary judgment because Justinian was conducting litigation by proxy. *Id.* at 167-68.

Syracuse also claims *Justinian* is inapposite because "Justinian's business plan specifically named litigation as its purpose . . . ." Opp. at 11. This unreasonably stretches the holding of *Justinian II*. The Court referenced the words of the business plan as evidence of the truth of Justinian's purpose, rather than the post-hoc excuses Justinian created during litigation. *See Justinian II*, 28 N.Y.3d at 167-68. Similarly here, Syracuse *also* admitted its entire business purpose was just to litigate on its Shareholders' Notes. 30(b)(6) Tr. 18:10-19:9 (Q. Mr. Cunha, so you – do you know why the shareholders decided to incorporate Syracuse? A. [Know] why?

---

[7] The Opposition also implies that the Shareholders were required to form a shell company and transfer the Notes under the terms of the Indentures in order to obtain contractual benefits. *See* Opp. at 4. This is meritless. The Indentures do not require one beneficial owner to hold the Notes (*see generally* Indentures), the Indentures specifically refer to "Holders" (plural) (*see* Reply SOMF ¶¶ 102-03), Syracuse does not claim to be acting under any of the Indenture provisions they cite, and groups of noteholders often act together without transferring their notes. *See, e.g., Universal Inv. Advisory SA v. Bakrie Telecom PTE, Ltd.*, 154 A.D.3d 171, 176 (1st Dep't 2017) (*group of plaintiffs* who held at least 25% of notes accelerated principal).

Yes. Because they tried to be just one entity to go to New York court. Q. So Syracuse was incorporated just for the purpose of this litigation? A. Yes. . . ."); *see also id.* at 23:15-23.

Syracuse further argues that unlike Justinian, "Syracuse has full ownership and rights over the Notes." Opp. at 12. But it is for this reason *Justinian* is analogous. Justinian too claimed "full title to the Notes" (Justinian Br. at 10), and the courts looked past the nominal ownership of the Notes to who actually controlled the Notes. *Justinian I*, 43 Misc. 3d at 607 (refusing to accept Justinian's claims "at face value" and instead looking at "the economic reality of the transaction"). Here, while account statements and letters from Cede & Co. state Syracuse possesses the Notes,[8] Syracuse admits that it has no effective control over the Notes—it cannot dispose of the Notes without the consent of the Shareholders. 30(b)(6) Tr. 143:19-144:11; *see Justinian I*, 43 Misc.3d at 607 ("DPAG still effectively controls the notes—the notes are in a lockbox, . . . Justinian cannot sell the notes without DPAG's consent . . . .").

Finally, Syracuse asserts that the fact that Syracuse will not retain any proceeds from this litigation is yet another difference between this case and *Justinian*. Opp. at 12. This is a meritless distinction. What distinguished *Justinian* from cases like *Love Funding*, *Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363 (2d Cir. 1999), and *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726 (2000) was the fact that Justinian did *not* plan to keep the

---

[8] Syracuse insists it "owns the Notes outright without restriction or limitation," and would merely "consult with Shareholders before taking action with respect to the Notes" (Opp. at 12 n.4), but Syracuse's claim both misses the actual issue and is unsupported by the record. Syracuse points to account statements and authorization letters to claim it owns the Notes without restriction. *Id.* (citing Reply SOMF ¶¶ 69, 90, 91). This is not the issue. It is undisputed that Syracuse possesses the Notes. The issue is that *in practice*, Syracuse has no independent authority over the Notes—it is just acting as the Shareholders' proxy. Syracuse tries to downplay this by saying it would merely "consult" with Shareholders, but Syracuse cites no evidence to support this claim. Instead, Syracuse has already admitted that it is has no independent authority. 30(b)(6) Tr. 143:19-144:2 ("I'm not able to sell [the Notes] because it doesn't belong to Syracuse directly. I have to respect the Shareholders' participation.").

7

*entirety* of the proceeds from the litigation. Indeed, the trial court noted that "[i]f Justinian were really buying the [notes], it would not be remitting the majority of their value back to the sellers"; instead, Justinian had acquired them "merely [as a] pretext for conducting litigation by proxy." 43 Misc. 3d at 606-07. It is illogical that a shell company remitting all of a judgment, rather than just a majority, to the assignor somehow disproves litigation by proxy—this is the perfect example of litigation by proxy: *all* of the money is going to the true owners of the Notes.

### C. Syracuse Directs this Court to Completely Inapposite Cases

Failing to distinguish this case from *Justinian*, Syracuse instead directs this Court to two cases that Syracuse proclaims are "far more analogous": *Mazzini v. Republic of Argentina* and *1442 Lex*. These cases bear almost no resemblance to the case at bar. *Mazzinni* was decided more than *ten years before Justinian II* and addresses champerty in less than a paragraph in the context of permitting discovery.[9] *See* 2005 WL 743090, at *4 (S.D.N.Y. Mar. 31, 2005). Discovery is not at issue here. Syracuse consented to PDVSA asserting champerty as a defense (ECF No. 76), and discovery has since established that Syracuse obtained the Notes for the primary purpose of litigation.

Similarly, *1442 Lex* grapples with champerty briefly, in the context of discovery, and does not address the issue of litigation by proxy. *See* 2021 WL 5745927, at *3. But rather than being more analogous, *1442 Lex* has a significant distinguishing factor: it addresses a plaintiff who acquired an interest in a defaulted mortgage. *See id.* Champerty is "construed narrowly in a mortgage foreclosure" because foreclosure is a necessary, but only ancillary, act of the primary

---

[9] Syracuse conflates *Mazzinni's* rejection of discovery into ownership of bonds with the separate request for discovery regarding champerty. *Compare* Opp. at 12-13 & n.5 *with Mazzini*, 2005 WL 743090, at *4 ("The Republic *also* seeks discovery of information relating to the defense of champerty.") (emphasis added). Proof of ownership is not at issue here. It is undisputed Syracuse possesses the Notes; the issue is that Syracuse's acquisition is void for champerty.

8

purpose in acquiring any distressed mortgage interest: *seizing the collateral*. *See 20 Cap Fund I, LLC v. Sookhai*, 2017 WL 8218894, at *3 (N.Y. Sup. Ct. Dec. 22, 2017).

Neither *Mazzini* nor *1442 Lex* address the circumstances here, where the plaintiff admits it is suing on behalf of its assignors and will remit proceeds back to them. Syracuse's failure to point to cases with facts similar to this case is telling, as there are several. *See, e.g.*, *Justinian II*, 28 N.Y. 160; *Sharbat*, 2023 WL 34377, at *14-17; *Leasing Control Inc. v. 500 Fifth Ave., LLC*, 142 N.Y.S.3d 807, 808 (1st Dep't 2021). Each case arrives at the same conclusion: the arrangement "is litigation by proxy and prohibited by § 489. If this [were] not champerty, then champerty [would] no longer exist[] in New York State." *Justinian I*, 43 Misc. 3d at 607.

## IV. SYRACUSE EXCHANGED NO VALUE FOR THE NOTES, ONLY EQUITY IN ITSELF—A SHELL COMPANY WHOSE VALUE IS ENTIRELY CONTINGENT ON THE VERY CONSIDERATION THE SHAREHOLDERS TRANSFERRED

Syracuse finally argues that its champertous litigation by proxy is protected under the safe harbor to New York's champerty statute because the shares Syracuse distributed to its Shareholders are valued at more than $500,000.[10] Opp. at 14-17. This contention is baseless.

To satisfy the safe harbor the assignee must have made a *bona fide* transfer of something worth at least $500,000, such that there is an actual payment obligation by the assignee to the assignor. *Justinian II*, 28 N.Y.3d at 169-170. "[I]f the obligation to pay at least $500,000 is entirely contingent on a successful outcome in the litigation, it does not constitute a binding and bona fide debt." *Id.* at 170 (alterations and quotations omitted). Put simply, the assignee cannot "receive the protection of the safe harbor without bearing any risk or having any skin in the game"; it must "have a binding and bona fide obligation to pay a purchase price of at least

---

[10] Syracuse submits no admissible evidence regarding the value of the Notes. *See* Opp. at 15-16 (relying on hearsay articles and reports, and improper factual attorney declaration); *Mattera v. JP Morgan Chase Corp.*, 740 F. Supp. 2d 561, 566 n.2 (S.D.N.Y. 2010); *Omnipoint Commc'ns, Inc. v. Common Council of City of Peekskill*, 202 F. Supp. 2d 210, 213 (S.D.N.Y. 2002).

$500,000, irrespective of the outcome of the lawsuit." *Id*. Just as in *Justinian II*, "this is precisely what is lacking here." *Id*.

Syracuse has no obligation to ever pay the Shareholders a cent. Instead, Syracuse points to the shares it issued the Shareholders, but the value of these shares is the very consideration the Shareholders provided to Syracuse—the Notes themselves. There is no "skin in the game" either for Syracuse or the Shareholders. Syracuse issued shares in the exact pro-rata amount of the proportion of Notes that each Shareholder transferred.[11] Opp. at 14-15. And the only payment Syracuse will ever to remit to the Shareholders on these Notes is their pro-rata proportion of any litigation award. *See id*. at 10. The fact this payment comes from shares rather than a contract is meaningless: they are both just obligations to pay that are contingent on a successful lawsuit. In other words, nothing has changed. The pro-rata shares mean the Shareholders are in the exact same position as before the transfer, and Syracuse never has to provide anything of value the Shareholders did not already possess.

Notably, Syracuse cites no case law supporting its argument. *See id*. at 14-17. And the only case undersigned counsel can locate that addresses assignors who received shares in the assignee in exchange for the transfer found the transfer to be champertous. *See Sharbat*, 2023 WL 34377, at *7, 15-17. As no real, *bona fide* value was transferred by Syracuse to the Shareholders, Syracuse cannot receive the protections of the safe harbor provision.

V. **CONCLUSION**

For the reasons stated above, PDVSA's Motion should be granted.

---

[11] The Opposition states the Shareholders also transferred other notes they possessed to Syracuse, issued by PDVSA or Venezuela. Opp. at 14-15. These transfers do not change the analysis—the shares issued were in the exact pro-rata proportion to the amount of notes each Shareholder gave to Syracuse. *Id*. While this Court need not address it, these transfers were also champertous.

| | |
|---|---|
| Dated: October 13, 2023<br>        New York, New York | **PAUL HASTINGS LLP**<br><br> *s/ Kurt W. Hansson*         <br>Kurt W. Hansson<br>Kevin P. Broughel<br>James L. Ferguson<br>Zachary D. Melvin<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: 212-318-6000<br>Facsimile: 212-319-4090<br>kurthansson@paulhastings.com<br>kevinbroughel@paulhastings.com<br>jamesferguson@paulhastings.com<br>zacharymelvin@paulhastings.com<br><br>*Counsel for Defendant Petróleos de Venezuela, S.A.* |